**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS (CHICAGO)**

---

LAUREN PARKER,
          Plaintiff,

      v.

TRANS UNION, LLC,
          Defendant.

CASE NO. 1:25-cv-09910

Judge Georgia N. Alexakis

---

**TRANS UNION LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO STRIKE**

---

Defendant consumer reporting agency Trans Union, LLC ("Trans Union"), by counsel, respectfully submits this Response in Opposition to Plaintiff's Motion to Strike Affirmative Defenses of Trans Union LLC [Dkt. No. 14] (the "Motion").

The Motion should be denied in the case where *pro se* Plaintiff claims that Trans Union violated the Fair Credit Reporting Act by reporting and verifying various alleged "inconsistent and conflicting data" for her AES, Capital One, Fair Collections & Outsourcing, Merrick Bank, Midland Credit Management, Navy Federal Credit Union and Santander accounts because:

    A.     Trans Union's defenses are well founded in the law and supported by fact; and

    B.     Even if Trans Union's defenses did not provide Plaintiff with the level of detail she seeks, Plaintiff has not and cannot demonstrate that she will be prejudiced by Trans Union's inclusion of its defenses, especially in light of Trans Union's agreement to withdraw six defenses.

**I.**     **<u>INTRODUCTION</u>**

*Pro se* Plaintiff Lauren Parker is a frequent filer of cases within this District, including multiple prior lawsuits against consumer reporting agencies and her creditors.[1] Among these prior

---

[1] *See, e.g., Parker v. Avis Budget Car Rental, LLC*, Case No. 1:2021cv06764, *Parker v. Capital Bank (USA), N.A.*, Case No. 1:2021cv06766, *Parker v. Experian Information Solutions, Inc. et al.,* Case No. 1:2021cv06787, *Parker v.*

lawsuits was a case against Trans Union, in which Plaintiff asserted similar claims under the Fair Credit Reporting Act ("FCRA") regarding Trans Union's alleged inaccurate reporting and verification of her Midland and Credit One accounts, although it was unclear exactly how she believed the information was inaccurate and how such reporting by Trans Union violated the FCRA.[2] *See Parker v. Trans Union, LLC et al.*, Case No. 1:22-cv-01731 (N.D. Ill. April 4, 2022). Judge Blakely granted defendants' joint motion for judgment on the pleadings and dismissed Plaintiff's claims against Trans Union in that case. *See id.*, Memorandum Opinion and Order [Dkt. No. 58]. In its order dismissing the case, the Court noted:

> The nature of the dispute(s) she raised, however, remains a mystery. In various parts of the Complaint, Plaintiff suggests that Credit One should not have furnished information relating to: (1) late payments; (2) the closure of her account; and possibly, (3) any information regarding her account at all. But she never suggests that the payments were not late, that her account was not closed, or that any other information furnished by Credit One was otherwise inaccurate. Instead, she deems this information "unreportable" for various reasons that appear entirely unsupported by law.

*Id*. at 5-6. Nevertheless, the Court dismissed the claims against Trans Union because "[the fact] that Plaintiff finds the fact of the transfer and the fact of the closure objectionable does not transform the reporting of that transfer or closure into an inaccuracy within the meaning of the FCRA." *Id*. at 12.

Somewhat similar to her prior lawsuit, Plaintiff alleges in the current Complaint that Trans Union violated the FCRA by reporting and verifying various alleged "inconsistent and conflicting data" for her AES, Capital One, Fair Collections & Outsourcing, Merrick Bank, Midland Credit Management, Navy Federal Credit Union and Santander accounts. *See* Complaint ¶¶ 10-20.

---

*TransUnion LLC et al*., Case No. 1:2022cv01731, *Parker v. Experian Information Solutions, Inc. et al.,* Case No. 1:2022cv01768, and *Parker v. Convergent Outsourcing, Inc*., Case No. 1:2025cv10333.

[2] Trans Union filed an Answer in that case asserting similar defenses (*see id*., Dkt. No. 44) and Plaintiff did not object to them or move to strike.

Plaintiff claims that she discovered and disputed the alleged inaccurate reporting beginning in June 2021 – ten months prior to filing her previous lawsuit against Trans Union – and that Trans Union continued reporting the information after she notified Trans Union of her intent to sue in June 2025. *See id.* ¶¶ 10-14.

On October 6, 2025, Trans Union filed its Answer in this matter, asserting twelve defenses, as discussed more fully below. Plaintiff filed the instant Motion on October 9, 2025, without attempting to resolve any of the issues with Trans Union prior to seeking judicial intervention. Nevertheless, without conceding any issues and leaving Plaintiff to her proofs, in an effort to limit the issues and reduce the burden on the parties and the Court, Trans Union hereby agrees to withdraw defenses #1 (failure to state a claim), #5 (qualified privileges), #9-10 (acts committed by other parties), #11 (due process rights) and #12 (reservation of rights).

## II. STANDARD

It is well settled that motions to strike are strongly disfavored. *See, e.g., Cir. Sys., Inc. v. Mescalero Sales, Inc.*, 925 F. Supp. 546, 548 (N.D. Ill. 1996). In fact, Judge McMahon from the Southern District of New York went as far to say,"[t]here is nothing dumber than a motion to strike boilerplate affirmative defenses; it wastes the client's money and the court's time." *Raymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 489–90 (S.D.N.Y. 2008). Indeed, a motion under Rule 12(f) "will be denied unless the language in the pleading has no relation to the controversy and is unduly prejudicial." *Mescalero Sales*, 925 F. Supp. at 548 (citing *Simmons v. John F. Kennedy Medical Ctr.*, 727 F.Supp. 440, 442 (N.D.Ill.1989)).

\\

\\

\\

\\

### III.    ARGUMENT

**A.    Trans Union's Defenses Are Well Founded In The Law And Supported By Fact.**

Pursuant to Rule 8(c), "a party must affirmatively state any avoidance or affirmative defense."  FED. R. CIV. P. 8(c).  However, the Seventh Circuit has not yet decided whether affirmative defenses must comply with the pleading requirements set forth in *Iqbal* and *Twombly*. *See Atiq v. WSH Packaging Sys., LTD*., No. 24 C 10344, 2025 WL 2354664, at \*2 (N.D. Ill. Aug. 14, 2025) (citing *City of Chicago v. DoorDash, Inc*., 636 F. Supp. 3d 916, 919–20 (N.D. Ill. 2022)). Nevertheless, district courts within the Circuit have reached different conclusions.  *See City of Chicago*, 636 F. Supp. 3d at 920 (collecting cases).  Without conceding that additional factual support is required for Trans Union's defenses at this time, and if necessary to supplement the remaining defenses with additional factual support, Trans Union provides the following analysis.

**1.    Plaintiff has failed to state a claim against Trans Union upon which relief may be granted.**

Without conceding any issues and leaving Plaintiff to her proofs, Trans Union will withdraw this defense.

**2.    Trans Union's reports concerning Plaintiff were true or substantially true; and**

**3.    Trans Union has at all times followed reasonable procedures to assure maximum possible accuracy of its credit reports concerning Plaintiff.**

Case law has confirmed that accurate credit reporting is a "complete defense" to a reporting or reinvestigation claim under the FCRA.  *See, e.g., Fahey v. Experian Info. Sols., Inc*., 571 F. Supp. 2d 1082, 1088 (E.D. Mo. 2008) ("Accurate reporting is a complete defense to both a 1681e(b) claim and a 1681i claim.").  In this case, Plaintiff has not and likely cannot demonstrate that Trans Union inaccurately reported the accounts.  Indeed, the majority of Plaintiff's concerns appear to simply be a facial challenge of the reporting (i.e. Plaintiff does not understand how a

payment can report for a closed account) rather than a bona fide challenge of the substantive information reporting (i.e. the creditor reported the wrong balance after a payment was made). But even if Plaintiff could prove that Trans Union's reporting was inaccurate, it is well established that the FCRA is not a strict liability statute. *See Sarver v. Experian Info. Sols.,* 390 F.3d 969, 971 (7th Cir. 2004) (citing *Henson v. CSC Credit Servs.,* 29 F.3d 280, 280 (7th Cir. 1994)). A consumer reporting agency's obligation under the FCRA is to employ reasonable procedures, not perfect ones. *See id.* Given the complexity of the consumer reporting system and the volume of information involved, inaccuracy does not render the procedures unreasonable. *See id.* at 972.

Trans Union maintains numerous and robust procedures to ensure accurate credit reporting and to perform reasonable reinvestigations of consumer disputes. Indeed, virtually every action undertaken by Trans Union is designed to ensure maximum possible accuracy of the data in its files.[3] Therefore, even if Plaintiff can demonstrate that any account information in this case was inaccurate, Plaintiff's claims will still fail because Trans Union maintained reasonable procedures to comply with the FCRA.

---

[3] Most data is contributed by electronic data transfer in the Metro 2® Format, and all data is reviewed for format errors (for example, data with numeric fields that contain alpha characters, data with mandatory fields that are blank, or data with an improper number of fields), and for anomalies in content (such as a creditor who normally reports 10% of its accounts as in collection suddenly reporting 90% of its accounts in collection, or a creditor reporting all its accounts with the same current balance) prior to the data being loaded to the database. When the data is uploaded, it is processed by complicated and proprietary algorithms, which are designed to combine data received from different creditors into applicable credit files for an individual consumer. Data is first pre-matched by creditor or subscriber number and account number, if the account is already present on Trans Union's database, with additional matching against the consumer's identification. Trans Union monitors data provided by creditors to detect anomalies and patterns of inaccuracies and works with creditors to ensure any problems are corrected.

Additionally, Trans Union has developed detailed procedures for providing consumers with access to their credit files and a means to request reinvestigations if they disagree with items appearing in their credit files. Trans Union has also implemented procedures designed to involve the consumers who are the subjects of the credit reports produced by Trans Union in the overall process that assures the maximum possible accuracy of such reports. Consumers who disagree with the accuracy or completeness of any items of credit information that are reported in their credit file may submit disputes of those items to Trans Union. Trans Union actively encourages consumers to request file disclosures, review them, and submit disputes of any items believed to be inaccurate or incomplete in order to assure that the information reported by Trans Union is as accurate as possible. Consumers can submit disputes to Trans Union in many convenient ways, including online, by mail, by telephone or even in person at Trans Union's consumer relations facilities in Crum Lynne, Pennsylvania. Trans Union requires that all consumer dispute requests be processed in accordance with an established set of reinvestigation policies and procedures.

**4. Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.**

The statute of limitations defense is specifically enumerated in Rule 8(c), and this Court has acknowledged a defendant's right to assert the defense. *See* Fed. R. Civ. P. 8(c)(1); *see also, e.g., Mason v. United Food & Com. Workers Union, Loc. 1546*, No. 24 CV 10922, 2025 WL 1331751, at *1 (N.D. Ill. May 7, 2025) ("statute of limitations is an affirmative defense"); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1041 (N.D. Ill. 2014) ("Defendant's second (statute of limitations), third (license), tenth (laches and estoppel), and twelfth (fraud) affirmative defenses all are enumerated in Rule 8(c).").

Pursuant to the FCRA, an action to enforce liability under any of the FCRA's provisions must be brought "not later than the earlier of—(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. In this case, Plaintiff alleges that she discovered the inaccurate reporting in 2021 and started disputing with Trans Union at that time. *See* Complaint ¶ 10 ("On multiple occasions; including June 14, 2021, August 2, 2021, September 2, 2021 and April 1, 2022, Plaintiff sent written disputes via certified mail to Trans Union disputing the completeness and/or accuracy of the [subject] tradelines."). Although Plaintiff alleges that she disputed again in June 2025, her claims are precluded at least in part (if not entirely) by the FCRA's applicable two-year statute of limitations because she discovered the alleged inaccurate reporting more than four years ago.

**5. At all relevant times, Trans Union acted within the absolute and qualified privileges afforded it under the FCRA, the United States Constitution, applicable State Constitutions and the common law.**

Without conceding any issues and leaving Plaintiff to her proofs, Trans Union will withdraw this defense.

**6.** **Plaintiff's claims are barred, in whole, or in part, by the equitable theories of estoppel, waiver and laches.**

The defenses of estoppel and laches are specifically identified in Rule 8(c). *See* FED. R. CIV. P. 8(c)(1). Indeed, courts have specifically held that equitable defenses are available in FCRA cases. *See, e.g., Kundmueller v. Pentagon Fed. Credit Union*, No. 520CV00056KDBDSC, 2021 WL 4806733, at \*5 (W.D.N.C. Oct. 14, 2021). In *Kundmueller*, the Court expressly held, "Plaintiff's FCRA claim is clearly barred by the equitable doctrine of estoppel." *Id*. at \*5 (noting, "[e]quitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity."). Summary judgment was granted for defendant in *Kundmueller* because, among other things, the court found that plaintiff knowingly took advantage of the practice of paying her mortgage late. The court held, "[h]aving sought and accepted the benefits of paying late under this policy without penalty, Plaintiff is not equitably permitted to now claim that PenFed's practice violates the FCRA." *Id*.

The same is true here. If Plaintiff knowingly took any actions to manipulate her obligations on the underlying debts in a way that resulted in any inaccurate reporting (i.e. making a payment after an account was closed then arguing that such reporting is illogical), Plaintiff should not be allowed as a matter of equity to hold Trans Union liable for such reporting. Additionally, any damages Plaintiff may have suffered here can and should be set off by the equitable theories of estoppel, waiver and laches, even if Plaintiff could maintain a federal cause of action. For example, Plaintiff alleges that she discovered and disputed the reporting with Trans Union as early as June 2021, but she does not allege that she took any actions to resolve the issues or pursue a claim until four years later. And while Plaintiff filed a prior lawsuit against Trans Union, she did not include many of the accounts that are at issue in the current litigation. Therefore, any damages Plaintiff may have suffered resulted, at least in part, from her failure to prosecute the claims in 2023 and and/or the two-year delay to file this case following dismissal of her prior lawsuit.

**7.** **Plaintiff has failed to take reasonable steps to mitigate her damages, if any; and**

**8.** **Plaintiff's damages are the result of acts or omissions committed by Plaintiff.**

The defense of contributory negligence is specifically enumerated in Rule 8(c), and failure to mitigate has also been recognized as proper affirmative defense within this District. *See* FED. R. CIV. P. 8(c)(1); *see also, e.g., Sarkis' Café,* 55 F. Supp. 3d at 1041 ("Defendant's eighth (failure to mitigate), fourteenth (unclean hands), and fifteenth (abandonment) defenses also constitute proper affirmative defenses."). It is common in FCRA cases that consumers fail to take responsible steps to correct inaccurate reporting or to otherwise comply with a prospective creditor's financing requirements before they seek new credit. Especially in the context of credit and credit reporting, there are a number of ways in which a consumer could be harmed by their own actions or omissions. For example, and most importantly, if Plaintiff timely paid each of the disputed debts, the furnishers of information would not have (or should not have) reported Plaintiff as delinquent. But beyond this, Trans Union cannot be liable if any of Plaintiff's subsequent credit applications were denied as a result of Plaintiff's otherwise accurate credit history or any other reason (i.e. failure to return the application paperwork, prior poor performance on a loan with the creditor, too many credit inquiries, insufficient funds for a down payment, etc.).

**9.** **Plaintiff's damages are the result of acts or omissions committed by the other parties over whom Trans Union has no responsibility or control; and**

**10.** **Plaintiff's damages are the result of acts or omissions committed by non-parties to this action over whom Trans Union has no responsibility or control.**

Without conceding any issues and leaving Plaintiff to her proofs, Trans Union will withdraw these defenses.

\\

**11.** **Any claim for exemplary or punitive damages asserted by Plaintiff violates Trans Union's rights under the Due Process and Excessive Fines clauses of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the analogous provisions of applicable State Constitutions and under the First Amendment of the United States Constitution and the analogous provisions of applicable State Constitutions**.

Without conceding any issues and leaving Plaintiff to her proofs, Trans Union will withdraw this defense.

**12.** **Trans Union reserves the right to assert additional defenses as may become apparent through additional investigation and discovery.**

Without conceding any issues and deferring to the requirements set forth in Rule 15 in the event that Trans Union may later seek leave to amend its pleadings, Trans Union will withdraw this defense.

**B.** **Even If Trans Union's Defenses Did Not Provide Plaintiff With The Level Of Detail She Seeks, Plaintiff Has Not And Cannot Demonstrate That She Will Be Prejudiced By Trans Union's Inclusion Of Its Defenses.**

Finally, Plaintiff's Motion should also be denied because Plaintiff has not and cannot be prejudiced by Trans Union's defenses, especially in light of Trans Union's withdrawal of six defenses. *See Mescalero Sales*, 925 F. Supp. at 548. In fact, the Motion is devoid of any discussion of how Plaintiff has been or could be prejudiced. *See generally* Motion. Nevertheless, each of Trans Union's defenses address fundamental issues required for Plaintiff to establish a prima facie claim against Trans Union under the FCRA. As such, Plaintiff will not be required to conduct any additional discovery regarding the basis for these defenses beyond the discovery that would be required to establish each element of her claims. Indeed, the information supporting Trans Union's defenses is largely within Plaintiff's knowledge (i.e. Plaintiff's payment history on the subject accounts, Plaintiff's communications with her creditors relating to those accounts, Plaintiff's subsequent credit applications, the basis for Plaintiff's failure to include the accounts in her prior

lawsuit against Trans Union).  The inclusion of these defenses will also not result in any additional dispositive motion briefing or trial preparation because, as discussed above, Trans Union's defenses address the same issues required for Plaintiff to establish a prima facie claim against Trans Union under the FCRA.

IV.      **CONCLUSION**

For the foregoing reasons, Trans Union respectfully requests this Court deny Plaintiff's Motion and award Trans Union its costs and fees incurred in defending against the Motion, along with such other relief as this Court deems equitable and just

Respectfully submitted,


/s/ *Scott E. Brady*
Scott E. Brady, Esq. (IL# 3053449)
Quilling, Selander, Lownds, Winslett
 & Moser, P.C.
10333 North Meridian Street, Suite 200
Indianapolis, IN 46290
Telephone:  (317) 497-5600, Ext. 602
Fax:  (317) 899-9348
E-Mail:  sbrady@qslwm.com

*Lead Counsel for Defendant Trans Union LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing has been filed electronically

on the **22nd day of October, 2025**.  Notice of this filing will be sent to the following parties via

E-Mail and by operation of the Court's electronic filing system.

| Lauren Parker (*pro se*) lnpark3r2@gmail.com | |
|---|---|

/s/ Scott E. Brady
Scott E. Brady, Esq. (IL# 3053449)
Quilling, Selander, Lownds, Winslett
 & Moser, P.C.
10333 North Meridian Street, Suite 200
Indianapolis, IN 46290
Telephone:  (317) 497-5600, Ext. 602
Fax:  (317) 899-9348
E-Mail:  sbrady@qslwm.com

*Lead Counsel for Defendant Trans Union LLC*